UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ANGELA SMITH | CIVIL ACTION NO. 21-0620 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STEVE PRATOR, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Record Document 43) filed by Defendants Steve Prator ("Prator"), Rick Farris ("Farris"), Kelli Hayes ("Hayes"), Sheila Wright ("Wright"), and Glennis Hawkins ("Hawkins") (collectively "Defendants"). Plaintiff Angela Smith ("Smith") has opposed the motion (Record Document 45), and Defendants have replied to the opposition (Record Document 46). With leave of court, Plaintiff has also filed a surreply (Record Document 55), and Defendants have replied to the surreply (Record Document 57). Having reviewed Plaintiff Angela Smith's Third Amended Complaint and applicable law, the Motion to Dismiss will be **GRANTED**.

I.   **Factual Background**

Plaintiff Smith is the surviving daughter of Dennis Ray Moore ("Moore"), a pretrial detainee who died while in custody at the Caddo Correctional Center ("CCC") in Shreveport, Louisiana, on February 22, 2020. See Record Document 39 at 2, 12, 34. Moore's death was due to respiratory failure secondary to necrotizing pneumonia, and Smith alleges that his death was proximately caused by both inadequate medical care and withholding of timely medical treatment by medical and corrections staff at CCC. See

1

id. at 12, 29. Smith also alleges that these acts and omissions were part of a pattern and practice of inadequate medical care and staffing at CCC, and therefore brings accompanying claims of supervisory and policymaker liability against several defendants. See id. at 13–17.

Although this case involves roughly a dozen defendants, the movants in the motion to dismiss under consideration here are Sheriff Prator and several employees of the Sheriff's Office or CCC: Commander Farris, Deputy Hawkins, Nurse Wright, and Nurse Hayes. See id. at 4–6, 8. Based on the Third Amended Complaint, this Court understands Smith to make both Section 1983 and state-law claims against the Defendants as follows: Prator in his official capacity, Farris in his official capacity, Hawkins in her official and individual capacities, Wright in her official and individual capacities, and Hayes in her official and individual capacities. The Defendants challenge all of these claims except: (1) the Section 1983 and state-law claims against Hawkins for her alleged failure to allow Moore to be seen by the infirmary a second time on February 21, 2020; and (2) the state-law vicarious liability claim against Prator for this alleged failure by Hawkins. See Record Document 43-1 at 12, 17. The remaining challenged claims will be addressed in turn below.

II.   **Pleading and Rule 12(b)(6) Standards**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of all complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this

standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

    III.    Analysis

        a. **Monell and Official Capacity Claims Against Prator, Farris, Hayes, Wright, and Hawkins**

In the Third Amended Complaint, Smith pleads Section 1983 claims against Prator, Farris, Hayes, Wright, and Hawkins in their official capacities. It is well established that a suit against a state or municipal employee in their official capacity is treated as a claim against the state or municipal entity itself. See Kentucky v. Graham, 473 U.S. 159, 166,

105 S. Ct. 3099 (1985). In an official capacity suit, the plaintiff must demonstrate that the enforcement of a custom or policy of the entity caused the alleged violation of plaintiff's rights. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978). A municipality is not liable under section 1983 on the theory of vicarious liability. See id. at 691. Under Monell, a municipality may be liable only if its official policy or custom is the "moving force" behind the plaintiff's alleged constitutional right violation. See Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003) (citations omitted).

Thus, Smith's Monell claims cannot be based on an allegation of "failure to supervise" alone. Instead, to succeed on a Monell claim against a defendant in their official capacity, and thus against a local government entity, a plaintiff must establish three elements: (1) an official policy or custom; (2) of which a policy maker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom. See Valle v. City of Houston, 613 F.3d 536, 541-42 (5th Cir. 2010). Proving these elements is "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

Under the first prong, "the existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." Valle, 613 F.3d at 542 (citing Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003)). Alternatively, a plaintiff can meet the first prong by alleging a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so

common and well settled as to constitute a custom that fairly represents municipal policy." Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984). Conclusory allegations that fail to adequately identify a custom or policy cannot survive. See Armstrong v. City of Shreveport, 532 F. Supp. 3d 341, 349 (W.D. La. 2021).

Here, Smith fails to state a viable Monell claim under the first prong of the analysis. Rather than identifying specific policies or practices and supporting those allegations with facts, Smith makes conclusory allegations that various "patterns and practices" exist within the CCC that led to a violation of Moore's rights. For example, the allegations state that "the defendants knew, and/or must have known, and/or should have known of serious deficiencies in the policies, practices and procedures at the jail related to medical screening, [medical care], and [medical] observation of prisoners, generally." Record Document 39 at 14 (brackets in original). Such an allegation and the numerous others like it in the Third Amended Complaint do not "raise a right to relief above the speculative level" as required under the federal pleading standards. Twombly, 550 U.S. at 555.

Additionally, many of these allegations are inclusive of all defendants, or subsets of the defendants, rather than appropriately applying to a specific defendant. In other places, the policy-related allegations appear to be contradictory. For instance, the Third Amended Complaint simultaneously alleges an affirmative policy or custom of ignoring serious medical conditions of inmates, see Record Document 39 at 13, a failure to follow constitutional policies in place, see id., and contracts and policies in place intended to assure competent medical care, see id. at 17–20. Similarly, the complaint references multiple times a pattern and practice of providing unconstitutionally deficient medical care to inmates at CCC, but then merely alleges facts surrounding Moore's death and makes

5

only a single generic reference to other cases or previous findings of constitutional violations at CCC due to inadequate medical care. See, e.g., id. at 15. Importantly, "one act is not itself a custom." Pineda, 291 F.3d at 329 (citing Piotrowski, 237 F.3d at 581). Even when viewed in the light most favorable to Smith, the voluminous allegations of patterns and practices simply do not give rise to a viable Monell claim. Because the allegations fail under the first prong of the Monell analysis, the claims against each defendant in their official capacities will be dismissed.

### b. Section 1983 Individual Capacity Claims

#### i. Hayes and Wright

In the Third Amended Complaint, Smith alleges that Nurses Hayes and Wright are responsible in their individual capacities for their role in supervising various staff members who may have played a part in Moore's death. In Ashcroft v. Iqbal, the Supreme Court noted that, much like claims for municipal liability, supervisory liability claims under Section 1983 cannot be based on respondeat superior. See 556 U.S. 662, 676, 129 S. Ct. 1937 (2009). Instead, liability may only be based on the supervisor's own wrongful acts or omissions, supported by a sufficient causal nexus between the wrongful conduct and the alleged constitutional violation. See id. Thus, for Smith to state a plausible claim against Hayes and Wright as supervisors, Smith must sufficiently plead that Hayes and Wright personally committed a constitutional violation. This is where the pleading fails.

For a plaintiff to successfully plead that medical care provided to a prisoner or detainee was so inadequate as to rise to the level of a constitutional violation, she must show that the defendant exhibited "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285 (1976). "Deliberate indifference is an

extremely high standard to meet." Domino v. Texas Dep't of Crim. Just., 239 F.3d 752, 757 (5th Cir. 2001). An allegation of deliberate indifference requires "facts clearly evincing 'wanton' actions on the part of the defendants." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Thus, the deliberate indifference standard is only met where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994). Further, the standard is based on actual knowledge, not what the supervisor allegedly "should have known." See Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996). The defendant must have subjectively intended the harm to occur. Thompson v. Upshur Cnty., TX, 245 F.3d 447, 460 (5th Cir. 2001).

Under this exacting pleading standard, the Third Amended Complaint fails to state a claim upon which relief can be granted. There are no allegations regarding Hayes or Wright's actual treatment of Moore, let alone their disregard of a serious medical need in the course of such treatment. See Record Document 43-1 at 5–9. The only allegation that may demonstrate personal involvement by Hayes and Wright is that they had a "duty" to review "kites," which are written requests submitted by inmates. See id. at 10. Such a conclusory allegation does not demonstrate that either Hayes or Wright was deliberately indifferent to the serious medical needs of Moore. "An officer-by-officer analysis is necessary when determining whether any officer acted with deliberate indifference to a prisoner's serious medical needs." Rombach v. Culpepper, No. 20-30554, 2021 WL 2944809, at *5 n.7 (5th Cir. July 13, 2021). Thus, simply stating that both Hayes and

Wright were generally "responsible" and had a "duty" to "train" and "supervise" others simply does not meet the standard for deliberate indifference.

Further, a supervisor faced with such a claim may assert the defense of qualified immunity, which Hayes and Wright have done here. See Record Document 43-1 at 10. Importantly, the burden is on the plaintiff to overcome a qualified immunity defense. See Grigsby & Assocs., Inc. v. City of Shreveport, 294 F. Supp. 3d 529, 541 (W.D. La. 2018). Yet Smith did not address the qualified immunity defense in the Third Amended Complaint or the Memorandum in Opposition to the Motion to Dismiss. See Record Documents 39 & 45. Thus, for the reasons stated above, the supervisory claims against Hayes and Wright in their individual capacities will be dismissed. To the extent a state-law claim for vicarious liability mirrors the Section 1983 claim for supervisory liability against Hayes and Wright, the state-law claims are also dismissed.

### ii. Hawkins

In the Motion to Dismiss, Hawkins seeks dismissal of all Section 1983 claims against her in her individual capacity, except the claim that "Moore was not allowed by Hawkins to be seen by medical a second time on February 21, 2020." Record Document 43-1 at 12. Other than the allegations concerning this event, the pleadings as they relate to Hawkins are conclusory and fail to state a claim upon which relief can be granted. Hawkins is primarily included in the group allegations against "the Law Enforcement Defendants." See Record Document 39 at 21. Smith alleges that these Law Enforcement Defendants were "responsible for making sure Moore was detained in a safe and constitutionally acceptable manner" and that they ultimately "acted with deliberate indifference" in failing to report Moore's symptoms, to ensure he received proper medical

8

care, and to address his medical complaints. Id. at 21–22. None of these allegations specify how Hawkins herself exhibited deliberate indifference to Moore's serious medical needs, as required by the case law discussed above. See Estelle, 429 U.S. at 104. Because deliberate indifference requires more specific pleadings, the challenged claims against Hawkins are insufficient and will be dismissed.

### c. Additional State Law Claims

The Third Amended Complaint asserts state-law claims based in negligence under Louisiana Civil Code article 2316 and vicarious liability under articles 2320 and 2324. See Record Document 39 at 31–32. To the extent these claims are distinct from the Section 1983 claims discussed above, they will be addressed in turn below.

Smith generally asserts negligence claims against all of the defendants, alleging that each defendant owed a duty to Moore for his medical care. See id. at 31. As Defendants point out in their Motion to Dismiss, the statutory basis for the duty to provide adequate medical care to inmates is found in La. R.S. 15:760, which requires that hospital quarters be provided with "necessary arrangement, conveniences, attendance, etc." The standard of care under this statute requires that the medical services provided to inmates be reasonable. Elsey v. Sheriff of Par. of E. Baton Rouge, 435 So. 2d 1104, 1106 (La. Ct. App.), writ denied sub nom. Elsey v. Sheriff of E. Baton Rouge Par., 440 So. 2d 762 (La. 1983). Like the Section 1983 claims, the negligence claims require pleading with particularity as to the negligent acts of each specific defendant. Here, however, the general allegations against all defendants for their negligence are too conclusory to make out a clear claim against any one defendant. Smith alleges that the defendants failed "to abide by policies and procedures" in place at CCC, but Smith fails to point to any specific

policy or procedure, whether written or otherwise, that each defendant personally flouted. See Record Document 39 at 31. Further, Smith alleges that the defendants were negligent "[b]y showing deliberate indifference to Moore's serious medical needs." Id. at 32. However, as explained above, Smith's pleadings are insufficient to demonstrate deliberate indifference. Overall, Smith combines the standards for each separate cause of action and lumps allegations together without any specific factual bases. Thus, the negligence claims against each Defendant must be dismissed for failure to state a claim upon which relief can be granted.

Smith asserts vicarious liability claims primarily against the "supervisory defendants," which include Prator, Hayes, and presumably Wright. See Record Document 39 at 33 n.10. As discussed above, the vicarious liability claims against Hayes and Wright are dismissed. With respect to the sheriff, as noted above, Prator does not seek dismissal of the vicarious liability claim pertaining to Hawkins's alleged failure to allow Moore to return to the infirmary on February 21, 2020. However, Prator does challenge any vicarious liability as to any negligent acts of the contract nurses and physician who treated Moore. See Record Document 43-1 at 17. Prator asserts that he cannot be vicariously liable for the acts of contracted employees because while a master is liable for the torts of their servant, a principal is typically not liable for the torts of a non-servant agent. See Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). This Court finds that Smith failed to plead facts establishing a relationship between Prator and the contracted employees that would support a claim of vicarious liability. See Record Document 43-1 at 18. Smith attached a "Contract for Professional Services" to the Third Amended Complaint, showing a contractual relationship between the Parish of Caddo

10

and Louisiana State University. See Record Document 39-1 Ex. A. However, Smith does not plead facts establishing that the individuals providing services through this contract are anything more than independent contractors. Thus, the vicarious liability claim against Prator for the actions of the contracted nurses and physician must be dismissed.

### IV.     Conclusion

Accordingly, the Defendants' Motion to Dismiss (Record Document 43) is **GRANTED**. The only remaining claims as to any of these Defendants are: (1) the Section 1983 and state-law claims against Hawkins for her alleged failure to allow Moore to be seen by the infirmary a second time on February 21, 2020; and (2) the state-law vicarious liability claim against Prator for this alleged failure by Hawkins.

An order consistent with the terms of the instant Memorandum Ruling shall issue forthwith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this  30th  day of September, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT