UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANGELA SMITH                              CIVIL ACTION NO. 21-0620

VERSUS                                    JUDGE S. MAURICE HICKS, JR.

STEVE PRATOR, ET AL.                      MAGISTRATE JUDGE HORNSBY


**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Record Document 58) filed by Defendants Per Diem Nursing Inc. ("Per Diem") and Claire Anderson ("Anderson") (collectively "Defendants"). Plaintiff Angela Smith ("Smith") has opposed the motion (Record Document 61), and Defendants have replied to the opposition (Record Document 63). Having reviewed Plaintiff Angela Smith's Third Amended Complaint and applicable law, the Motion to Dismiss will be **GRANTED**.

I.  **Factual Background**

Plaintiff Smith is the surviving daughter of Dennis Ray Moore ("Moore"), a pretrial detainee who died while in custody at the Caddo Correctional Center ("CCC") in Shreveport, Louisiana, on February 22, 2020. See Record Document 39 at 2, 12, 34. Moore's death was due to respiratory failure secondary to necrotizing pneumonia, and Smith alleges that his death was proximately caused by both inadequate medical care and withholding of timely medical treatment by medical and corrections staff at CCC. See id. at 12, 29. Smith also alleges that these acts and omissions were part of a pattern and practice of inadequate medical care and staffing at CCC, and therefore brings

1

accompanying claims of supervisory and policymaker liability against several defendants. See id. at 13–17.

Although this case involves roughly a dozen defendants, the movants in the motion to dismiss under consideration here are Anderson and her employer Per Diem. See Record Document 58. Anderson is a nurse who saw Moore on February 15, 2020, in the CCC medical facility. See Record Document 39 at 6–7, 10. Per Diem, according to the Third Amended Complaint, is "responsible for providing all staffing, training, policies and procedures" for Anderson and is allegedly liable "through the application of respondeat superior and/or Monell" for the allegedly tortious acts of Anderson. See id. at 8. Defendants move to dismiss the Section 1983 claims against them because they argue that the pleadings fail to demonstrate deliberate indifference. See Record Document 58 at 1. Defendants further ask this Court to decline Section 1367 supplemental jurisdiction over Smith's state-law claims. See id. at 2.

## II. Pleading and Rule 12(b)(6) Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of all complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a

cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

### III. Analysis

#### a. Section 1983 Claims

Smith asserts a Section 1983 claim against Anderson based on her alleged deliberate indifference towards Moore's serious medical needs, thus constituting a violation of Moore's rights under the Eighth Amendment. See Record Document 39 at 27. For a plaintiff to successfully plead that medical care provided to a prisoner or detainee was so inadequate as to rise to the level of a constitutional violation, she must show that the defendant exhibited "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285 (1976). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Crim. Just., 239 F.3d 752, 757 (5th Cir.

2001). An allegation of deliberate indifference requires "facts clearly evincing 'wanton' actions on the part of the defendants." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Thus, the deliberate indifference standard is only met where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994). Further, the standard is based on actual knowledge, not what the supervisor allegedly "should have known." See Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996). The defendant must have subjectively intended the harm to occur. Thompson v. Upshur Cnty., TX, 245 F.3d 447, 460 (5th Cir. 2001).

Notably, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Instead, Smith must establish that Anderson "refused to treat [Moore], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino, 239 F.3d at 756 (quoting Johnson, 759 F.2d at 1238). This Court finds that the Third Amended Complaint does not adequately plead deliberate indifference under this standard.

As pleaded in the Third Amended Complaint, Anderson saw Moore only one time in the CCC medical facility, on February 15, 2020. See Record Document 39 at 10. The Complaint further states that during that visit, Anderson recorded Moore's vitals and then abided by Dr. Nelson's orders "to administer 'two (2)' Tums to Mr. Moore." See id.

4

Anderson then asked Moore "to return for sick call the following day." See id. Even when viewed in the light most favorable to Smith, these allegations cannot demonstrate deliberate indifference on the part of Anderson. Anderson took and recorded Moore's vitals and followed the care plan that the doctor in charge ordered. Simply put, Anderson obeyed the requirements of her position, and there was no indication on February 15 that Moore's condition required anything more. Additionally, after their interaction on February 15, Anderson did not see, treat, or communicate with Moore at all. Thus, any claim that Anderson failed to treat Moore is misplaced, as Anderson treated him on the one occasion she was able. These facts do not rise to the level of deliberate indifference necessary to sustain a Section 1983 claim against Anderson.

      Smith argues that this Court should apply an "objective deliberate indifference" test to Anderson's actions because Moore was a pretrial detainee, rather than a prisoner. See Record Document 61 at 8. Under this objective standard, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017). The plaintiff must show the unreasonableness of the defendant's actions, "not with the 20/20 vision of hindsight," but weighing the facts as they existed at the time against the government's legitimate interests. Kingsley v. Hendrickson, 576 U.S. 389, 397, 135 S. Ct. 2466 (2015). Even under such an objective test, as the Defendants point out in their Reply, the pleadings still fail to state a claim upon which relief can be granted. See Record Document 63 at 5.

There are simply no allegations in the Third Amended Complaint that Anderson should have known of an excessive risk of harm to Moore on February 15. Although Smith alleges that Moore's vitals on February 15 were generally concerning, Smith alleges in her Opposition that Moore's condition began to deteriorate <u>after</u> Anderson saw Moore. <u>See</u> Record Document 39 at 10; Record Document 61 at 4. Moore's "new symptoms" of "shortness of breath, congestive cough, dizziness, and disorientation" did not arise until "[t]he next morning, February 16." Record Document 39 at 10. Because Anderson is not the nurse who attended Moore after his condition worsened, she cannot have known about the increased risk to his health at the time she treated him. Further, there are no allegations that establish Anderson was the person responsible for ensuring Moore return for sick call, or for addressing the other inmates' "kites," or written requests, about Moore. Anderson's involvement with Moore's care is strictly limited to February 15, a point at which Moore's condition did not pose a serious risk to his health or safety. Thus, even under an objective standard, the Third Amended Complaint does not demonstrate deliberate indifference by Anderson, and the Section 1983 claims against Anderson must be dismissed.

As for Per Diem, the only claims against it concern respondeat superior and <u>Monell</u>. <u>See</u> Record Document 39 at 8. However, these claims are misplaced. In <u>Ashcroft v. Iqbal</u>, the Supreme Court noted that supervisory liability claims under Section 1983 cannot be based on respondeat superior. <u>See</u> 556 U.S. 662, 676, 129 S. Ct. 1937 (2009). Instead, liability may only be based on the supervisor's own wrongful acts or omissions, supported by a sufficient causal nexus between the wrongful conduct and the alleged constitutional violation. <u>See id.</u> Thus, for Smith to state a plausible claim against Per Diem

6

in a supervisory capacity, Smith must sufficiently plead that Per Diem personally committed a constitutional violation. This is where the pleading fails. There are no allegations demonstrating that Per Diem committed a constitutional violation other than several conclusory statements about Per Diem's role in establishing "policies, procedures, and customs" at the CCC medical facility. See Record Document 39 at 16. These allegations are insufficient to establish that Per Diem itself was deliberately indifferent to Moore's serious medical needs. Additionally, Monell is not the proper vehicle to hold Per Diem liable under Section 1983, as a Monell claim pertains to municipal liability. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978). There are no allegations that would establish Per Diem as the proper party to establish municipal liability against Caddo Parish, the municipality in question here. For these reasons, the Section 1983 claims against Per Diem will be dismissed.

### b. State Law Claims

Defendants argue that the Court should decline to exercise Section 1367 supplemental jurisdiction over the remaining state-law claims against Anderson and Per Diem because these claims sound in medical malpractice, and thus implicate complex statutory schemes under Louisiana law. See Record Document 58 at 2; La. R.S. 40:1231.8; Coleman v. Deno, 813 So. 2d 303 (La. 2002). The Court may decline to exercise supplemental jurisdiction where the state-law claim "raises a novel or complex issue of State law" or "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367. This Court agrees with Defendants that the tort claims against Anderson and Per Diem sound in medical malpractice. The Third Amended Complaint alleges negligence by the Defendants in

7

"failing to provide Moore with a proper diagnosis and medication," among other claims. See Record Document 39 at 31. These claims therefore involve complex issues of state law, including review by an administrative panel. Thus, judicial economy favors the dismissal of these claims without prejudice.

### IV.     Conclusion

Accordingly, the Defendants' Motion to Dismiss (Record Document 58) is **GRANTED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue forthwith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of September, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT