## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| ANGELA SMITH | CIVIL ACTION NO. 21-0620 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STEVE PRATOR, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 65) filed by Defendants David Nelson ("Dr. Nelson") and Louisiana State University Health Sciences Center - Shreveport ("LSUHSC-S") (collectively "Defendants"). Plaintiff Angela Smith ("Smith") did not file an opposition to this motion. Having reviewed Smith's Third Amended Complaint and applicable law, the Motion to Dismiss will be **GRANTED**.

I.  **Factual Background**

Plaintiff Smith is the surviving daughter of Dennis Ray Moore ("Moore"), a pretrial detainee who died while in custody at the Caddo Correctional Center ("CCC") in Shreveport, Louisiana, on February 22, 2020. See Record Document 39 at 2, 12, 34. Moore's death was due to respiratory failure secondary to necrotizing pneumonia, and Smith alleges that his death was proximately caused by both inadequate medical care and withholding of timely medical treatment by medical and corrections staff at CCC. See id. at 12, 29. Smith also alleges that these acts and omissions were part of a pattern and practice of inadequate medical care and staffing at CCC, and therefore brings accompanying claims of supervisory and policymaker liability against several defendants. See id. at 13–17.

1

Although this case involves roughly a dozen defendants, the movants in the motion to dismiss under consideration here are Dr. Nelson and his employer LSUHSC-S. See Record Document 65. Dr. Nelson was the treating physician at CCC who prescribed medication for Moore when he arrived at the CCC medical facility; Dr. Nelson is also alleged to be the supervisor of other medical personnel at CCC. See Record Document 39 at 6. LSUHSC-S is "the entity contracted by Sheriff Prator to provide medical services to prisoners and detainees at CCC, and did employ Dr. Nelson." See id. at 8. Defendants move to dismiss all claims against them primarily because (1) LSUHSC-S is entitled to sovereign immunity as an arm of the state, (2) the pleadings fail to demonstrate deliberate indifference, (3) Dr. Nelson is entitled to qualified immunity, and (4) the state-law claims sound in medical malpractice and have been brought prematurely. See Record Document 65.

## II.     Pleading and Rule 12(b)(6) Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of all complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a

cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

### III. Analysis

#### a. Claims against LSUHSC-S

Smith asserts Section 1983 claims against LSUHSC-S under a theory of respondeat superior and Monell. See Record Document 39 at 8. Defendants argue that these claims must fail because LSUHSC-S is entitled to sovereign immunity under the Eleventh Amendment as an arm of the state. See Record Document 65. This Court agrees with Defendants that LSUHSC-S is entitled to sovereign immunity, and thus the claims against LSUHSC-S must be dismissed.

Louisiana has not waived its sovereign immunity under the Eleventh Amendment. See Raj v. Louisiana State Univ., 714 F.3d 322, 328 (5th Cir. 2013); La. R.S. §

13:5106(A). Even where the state itself is not named as a defendant, "a plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself." Richardson v. S. Univ., 118 F.3d 450, 452 (5th Cir. 1997). State agencies and arms of the state thus similarly enjoy sovereign immunity under the Eleventh Amendment. See id. Thus, if LSUHSC-S qualifies as an arm of the state, Smith's claims against it must be dismissed. Courts typically use six factors to determine if a political entity is an arm of the state for purposes of sovereign immunity: "(1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property." Vogt v. Bd. of Comm'rs of Orleans Levee Dist., 294 F.3d 684, 689 (5th Cir. 2002). "[T]he most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." Delahoussaye v. City of New Iberia, 937 F.2d 144, 147–48 (5th Cir.1991).

As Defendants point out in their motion, LSUHSC-S is a state agency under Louisiana law. See La. R.S. § 36:642(B). Additionally, "LSU receives state funding as an executive branch agency, must dispense donations in accordance with state law, and pays judgments against it from state funds." Raj, 714 F.3d at 329. Further, "[i]t is well-settled in the Fifth Circuit that institutions of higher education and their boards are arms of the state entitled to immunity." Hall v. Bd. of Supervisors of Cmty. & Tech. Colleges, No. CIV.A. 15-67, 2015 WL 2383744, at *4 (E.D. La. May 18, 2015); see also United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ., 665 F.2d 553, 557 (5th

4

Cir. 1982) ("The majority of decisions concerning the eleventh amendment status of state universities have concluded the institutions involved were arms of the state."). Because LSUHSC-S is a state agency receiving public funding from the state, LSUHSC-S should be entitled to the same sovereign immunity as the state. Thus, the Section 1983 claims against LSUHSC-S must be dismissed.

Further, as Defendants argue in their motion, neither a state nor a state agency is considered a "person" for purposes of Section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 109 S. Ct. 2304 (1989) (holding that "a State is not a person within the meaning of §1983"). Thus, LSUHSC-S, as a state agency, does not qualify as a "person" for purposes of Section 1983 and is therefore not amenable to suit. See Adams v. Recovery Sch. Dist. ex rel. Louisiana, Dep't of Educ., 463 F. App'x 297, 298 (5th Cir. 2012). Because LSUHSC-S cannot be sued as a "person" under Section 1983, these claims must be dismissed.

In the Third Amended Complaint, Smith also asserts state-law claims against LSUHSC-S under a theory of vicarious liability. See Record Document 39 at 33. However, "[t]he Supreme Court in Pennhurst State School and Hospital v. Halderman held that sovereign immunity barred federal courts from hearing state law claims brought in federal court against state entities." Raj, 714 F.3d at 329. "In short, [Smith's] federal and state-law claims rise and fall together. And fall they must." Richardson, 118 F.3d at 453. Thus, because LSUHSC-S is an arm of the state, Smith's state-law claims against it also must be dismissed.

5

### b. Claims against Dr. Nelson

#### i. Section 1983

Smith asserts Section 1983 claims against Dr. Nelson in both his official and individual capacities. To the extent Smith attempts to recover monetary damages from Dr. Nelson in his official capacity, the claim must be dismissed. Much like the state is not a suable "person" under Section 1983, a suit for damages cannot be maintained against an official in their official capacity because such a suit is really a suit against the state itself. See Will, 491 U.S. at 71. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347 (1945). Thus, where Smith attempts to assert a Section 1983 claim for monetary damages against Dr. Nelson as an employee of the state in his official capacity, the claim must be dismissed.

Smith also asserts a Section 1983 claim against Dr. Nelson in his individual capacity for his alleged deliberate indifference towards Moore's serious medical needs, thus constituting a violation of Moore's rights under the Eighth Amendment. See Record Document 39 at 6, 24. For a plaintiff to successfully plead that medical care provided to a prisoner or detainee was so inadequate as to rise to the level of a constitutional violation, she must show that the defendant exhibited "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285 (1976). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Crim. Just., 239 F.3d 752, 757 (5th Cir. 2001). An allegation of deliberate indifference requires "facts clearly

evincing 'wanton' actions on the part of the defendants." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Thus, the deliberate indifference standard is only met where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994). Further, the standard is based on actual knowledge, not what the supervisor allegedly "should have known." See Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996). The defendant must have subjectively intended the harm to occur. Thompson v. Upshur Cnty., TX, 245 F.3d 447, 460 (5th Cir. 2001).

Notably, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Even gross negligence is insufficient to establish deliberate indifference. See Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regul. Servs., 380 F.3d 872, 882 (5th Cir. 2004). Instead, Smith must establish that Dr. Nelson "refused to treat [Moore], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino, 239 F.3d at 756 (quoting Johnson, 759 F.2d at 1238). This Court finds that the Third Amended Complaint does not adequately plead deliberate indifference under this standard.

The allegations surrounding Dr. Nelson in the Third Amended Complaint are largely conclusory statements about his role in "treating and diagnosing inmates with

7

various illnesses, injuries and ailments, ordering blood work, x-rays, requesting additional testing" and other broad descriptions. See Record Document 39 at 6. Such conclusory statements cannot establish deliberate indifference to Moore's serious medical needs. The allegations specific to Moore's medical care are that Dr. Nelson instructed nurses to administer two Tums to Moore on both February 15 and 21. See id. at 10–11. Even if Smith believed this prescription to be incorrect, "[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." Domino, 239 F.3d at 756. Prescribing medicine on two occasions, without additional facts, does not rise to the level of deliberate indifference necessary to sustain a Section 1983 claim against Dr. Nelson. Further, the allegation that Dr. Nelson failed to follow procedure when Moore did not show up for his follow-up appointment, even if accurate, does not demonstrate anything more than mere negligence. See Record Document 39 at 20. Smith has not adequately plead any intentional act or wanton disregard on Dr. Nelson's part that would establish anything more than negligence or medical malpractice. Thus, the pleadings do not establish deliberate indifference, and the Section 1983 claim against Dr. Nelson must be dismissed.

Smith also appears to assert a Section 1983 claim against Dr. Nelson for his role in supervising other medical staff at CCC. See Record Document 39 at 16, 18, 22. However, in Ashcroft v. Iqbal, the Supreme Court held that supervisory liability claims under Section 1983 cannot be based on respondeat superior. See 556 U.S. 662, 676, 129 S. Ct. 1937 (2009). Instead, liability may only be based on the supervisor's own wrongful acts or omissions, supported by a sufficient causal nexus between the wrongful conduct and the alleged constitutional violation. See id. Thus, for Smith to state a

8

plausible claim against Dr. Nelson in a supervisory capacity, Smith must sufficiently plead that Dr. Nelson personally committed a constitutional violation. As explained above, this is where the pleading fails because Smith has not adequately plead deliberate indifference on the part of Dr. Nelson. Further, although supervisory liability can be based on an entity's custom or policy, as in Monell, the Third Amended Complaint fails to plead with particularity a specific custom or policy instituted by Dr. Nelson (or LSUHSC-S) that led to a constitutional violation. See Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997). Thus, the supervisory liability claims under Section 1983 must also be dismissed.

On a related note, where a defendant raises the defense of qualified immunity, the burden is on the plaintiff to overcome such a defense. See Grigsby & Assocs., Inc. v. City of Shreveport, 294 F. Supp. 3d 529, 541 (W.D. La. 2018). Here, Dr. Nelson has asserted the defense of qualified immunity. See Record Document 65-3 at 8. Yet Smith did not address the qualified immunity defense in the Third Amended Complaint and did not file an opposition to the Motion to Dismiss. See Record Document 39. Thus, the claims against Dr. Nelson in his individual capacity must be dismissed.

### ii. State-law claims

Smith asserts negligence claims against all named defendants for their alleged deliberate indifference in the medical treatment of Moore. See id. at 31–32. Defendants argue that any of these state-law claims against Dr. Nelson (and LSUHSC-S) are premature because Louisiana law requires several administrative procedures, such as a submission to the Medical Review Panel, before a suit may be filed. See Record Document 65-3 at 7. This Court agrees with Defendants that the Louisiana Medical

9

Malpractice for State Services Act ("LMMSSA") governs Smith's negligence claims. See La. R.S. 40:1237.2. Because the alleged negligence is based on "medical treatment" and "proper diagnosis and medication," Smith's negligence claims sound in medical malpractice. See Record Document 39 at 31–32; Coleman v. Deno, 813 So. 2d 303 (La. 2002). Thus, Smith must follow the administrative guidelines laid out in the LMMSSA before a lawsuit can proceed. Based on the facts alleged in the Third Complaint and the Motion to Dismiss, it is unclear whether Smith has submitted her claim to the Medical Review Panel under the LMMSSA. Thus, Smith's negligence claims against Dr. Nelson appear to be premature, and thus should be dismissed.

Further, although not argued by Defendants in their motion, it should be noted that the Court may decline to exercise Section 1367 supplemental jurisdiction over certain state-law claims after dismissing related federal claims. See 28 U.S.C. § 1367. Here, as discussed above, the remaining state-law claims against Dr. Nelson sound in medical malpractice, and thus implicate complex statutory schemes under Louisiana law. See La. R.S. 40:1231.8. The Court may decline to exercise supplemental jurisdiction where the state-law claim "raises a novel or complex issue of State law" or "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367. Because this Court finds that the state-law claims against Dr. Nelson sound in medical malpractice, and these claims therefore involve complex issues of state law, judicial economy favors the dismissal of these claims without prejudice.

## IV. Conclusion

Accordingly, the Defendants' Motion to Dismiss (Record Document 65) is **GRANTED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue forthwith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 5th day of October, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT